WILMENNIA BECKER ORTH *v.* RICHARD SMEDLEY, DORIS SMEDLEY

[No. 1-1277A295. Filed July 11, 1978.]

*John W. Mead, Mead, Mead & Mead*, of Salem, for appellant.

*James D. Allen*, of Salem, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Plaintiff-appellant Wilmennia Becker Orth appeals from a summary judgment rendered in favor of defendants-appellees Richard Smedley and Doris Smedley in her action to recover damages for injuries sustained by Mrs. Orth when she slipped and fell on ice while leaving the apartment which she rented from the Smedleys.

The Smedleys, residents of Mitchell, Indiana, owned a two-story structure in Salem, Indiana, which they held as rental property. A printing shop was located on the first floor of the building. On the second floor were two apartments. The operators of the printing shop (Mr. and Mrs. Spencer) occupied one apartment, and Mrs. Orth moved into the other apartment on November 1, 1970

In order to reach the highway, which was on the south side of the building, Mrs. Orth had to exit from her apartment on the north side of the building, cross a footbridge which was approximately twelve feet long, turn to her right and cross a graveled parking area, and then follow a driveway along the east side of the building to the highway. Mrs. Orth traveled this route at least twice a day, six days a week, from November 1, 1970, until date of her injury, January 28, 1971.

Mrs. Orth stated in her deposition that a heavy rain fell during the hours between midnight and 6:00 a.m. on January 28, 1971.

At approximately 6:00 a.m., Mrs. Orth heard a honking horn, which indicated that the lady with whom she rode to work each day was waiting for Mrs. Orth in her automobile parked along the highway in front of the building. Mrs. Orth was aware of the fact that it had rained heavily earlier that morning, but she was not aware that ice had formed.

She crossed the footbridge without difficulty and stated in her deposition that the bridge was not slippery. Mrs. Orth stepped from the bridge

and walked approximately fifteen feet before she fell, breaking her arm. As she walked along that fifteen feet, she became well aware that ice had accumulated:

"* * *

Q.  And during that trip of fifteen feet, was there ice there?

A.  Yes, lot of it.

Q.  You observed the ice?

A.  I then was slipping.

Q.  You started slipping then, did you stop or did you go on?

A.  I was trying to go on, to tell the truth, I was trying to get to this car out in front.

Q.  In other words, the car was out in front, blowing to pick you up and you were trying to get out there to get in the car; and, although you were slipping you continued to go forward?

A.  I thought I could make it.

Q.  You made a judgment then that you could go ahead and get there?

A.  Yes.

Q.  Although you did realize there was ice on the ground?

A.  Yes.

Q.  And you discovered that the ground was covered with ice as soon as you stepped off the bridge?

A.  Yes.

Q.  Had you observed any ice before you stepped off the bridge? Could you see the ice on the ground or just feel it was there?

A.  Well, just more so feel it.

On January 15, 1973, Mrs. Orth filed her complaint against the Smedleys. She alleged that the Smedleys were negligent in failing to warn Mrs. Orth of the hazard created by the ice and in failing to remove the ice.

The trial court entered summary judgment for the Smedleys.

Mrs. Orth contends on appeal that the trial court erred in granting the motion for summary judgment. She argues that the Smedleys had a duty to remove the ice and that genuine issues of material fact existed in the proceeding.

The trial court properly may grant a motion for summary judgment "... if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Rules of Procedure, Trial Rule 56(C).

The proponent of a motion for summary judgment bears the burden to show that no genuine issues of material fact exist. Facts set forth in the opponent's affidavit are taken as true. Depositions, admissions, answers to interrogatories, and testimony are construed liberally in favor of the opponent. *Podgorny v. Great Central Insurance Co.* (1974), 160 Ind. App. 244, 311 N.E.2d 640.

The tort of negligence consists of three elements: (1) A duty owed by defendant to plaintiff; (2) failure of defendant to conform his conduct to the requisite standard of care dictated by the relationship; and (3) injury caused plaintiff as a result of that failure. *Miller v. Griesel* (1973), 261 Ind. 604, 308 N.E.2d 701.

In *Purcell v. English* (1882), 86 Ind. 34, 42-43, a tenant fell while descending a stairway common to the use of all tenants in the building. The stairway had become dangerous due to an accumulation of ice and snow. As the tenant fell, she grasped a railing, which came loose. When the railing gave way, the tenant fell to the payment and suffered injuries. Our Supreme Court stated the following rule:

"... We are satisfied that the authorities warrant us in adjudging that, where a stairway connected with apartments hired in a tenement house occupied by several tenants is rendered unsafe by temporary causes, such as the accumulation of snow and ice, the landlord is not liable to the tenant who uses such a stairway with full knowledge of its dangerous condition, unless there is a contract on the part of the landlord to keep the premises in repair and fit for safe use. . . . If any other rule is adopted, then the owner is charged with the duty of watching steps leading to every part

of the premises, and of keeping them free from all temporary obstructions; for, let it once be granted that the landlord is liable for obstructions or defects not permanent and not growing out of the character of the structure, it will be impossible to draw any line, and he must be held accountable for all obstructions and defects, no matter how transient their character. . . .

The evidence before us shows that the ice and snow made the stairway unsafe, and caused the accident. But for the ice and snow, which the tenant could have removed with very little labor, or at a trifling expense, the appellant could have used the stairway in perfect safety. We are satisfied that the court below was right in holding that the cause of the accident was the accumulation of ice and snow upon the stairway, and that, for an injury resulting from such a cause, a landlord who had made no covenant to repair is not liable.

* * *"

The issue of whether the defendant owes plaintiff a duty is an issue of law. *Miller v. Griesel, supra.* Our Supreme Court states in *Purcell v. English, supra,* that the landlord owes his tenant no duty to remove ice and snow from common areas unless he specifically contracts to do so. The uncontradicted facts in the case at bar, when viewed with regard to the rule set forth in *Purcell,* show that the Smedleys owed Mrs. Orth no duty.

Mrs. Orth and the Smedleys and this court have been unable to find a more recent statement by the Supreme Court concerning the duty of a landlord to remove ice and snow. Mrs. Orth asks this court to follow certain other states in adopting the so-called "Connecticut rule." She quotes from *Fuller v. Housing Authority of Providence* (1971), 108 R.I. 770, 279 A.2d 438, 441, in which the Supreme Court of Rhode Island adopted such a rule:

" '* * *

As we adopt the Connecticut Rule, we wish to emphasize that a landlord is not a guarantor for the safety of his tenants as they proceed along the common ways. What we do say, however, is that an accumulation of ice or snow upon those portions of the premises reserved for the common use of his tenants may make the landlord liable for injuries sustained by his tenant which are due to such an accumulation, provided the landlord knows, or should have

known, of the condition and failed to act within a reasonable time thereafter to protect against injuries caused thereby. The mere accumulation of snow or ice does not ipso facto make the landlord liable; he must be given a reasonable time after the storm has ceased to remove the accumulation of snow or ice found on the common ways or to take such measures as will make the common areas reasonably safe from the hazards arising from such a condition. . . .' "

Even assuming, for sake of analysis, that Indiana recognized the so-called Connecticut rule, the facts in the case at bar would warrant the granting of the Smedleys' motion for summary judgment.

The question of what standard of care the courts will impose on a relationship once a duty is recognized is a question of law. The traditional standard is whether the defendant has exercised his duty with the level of care that an ordinary prudent person would exercise under the same or similar circumstances. *Miller v. Griesel, supra.*

The Connecticut rule recognizes that the landlord is entitled to actual or constructive notice of the presence of ice and snow and is also entitled to reasonable opportunity to remove the ice and snow. The uncontradicted facts in the case at bar show that the Smedleys had neither notice nor opportunity.

Mrs. Orth stated in her deposition that the rain came sometime after midnight and before 6:00 a.m. on the day she fell; that the weather had changed rapidly, causing the icy condition; that the ice was not obvious when looking at the ground at 6:00 a.m., but when she tried to walk away from the bridge she realized that ice had formed on the ground; and that she elected to continue forward because she was hurrying to reach the automobile waiting on the highway.

Mrs. Orth argues on appeal that the Smedleys had actual notice of the ice. The Smedleys lived in Mitchell. Mr. Smedley stated that he did not recall the exact time at which he awoke on January 28, 1971, but he estimated that he awakened at approximately 7:30 a.m. Mrs. Orth stated during her deposition that she had no reason to believe the Smedleys had actual notice.

Mrs. Orth contends that the Smedleys had constructive notice of the icy condition because of the Spencers' presence on the premises. The

Spencers assumed some responsibility for watching over the property in the absence of the Smedleys.

Mrs. Orth recalled during her deposition that an attendant at a nearby service station heard her cries for help. The attendant went to the Spencers' apartment and awakened Mrs. Spencer. Mrs. Spencer later awakened Mr. Spencer so that they could take Mrs. Orth to the hospital.

The evidence of record shows that the Spencers were not aware of the icy condition. The icy condition developed after midnight; it was not detectable by sight; and even if it had been detectable by sight, the Spencers were asleep. An ordinary prudent person would not stand guard over the premises constantly. The Rhode Island court, in applying the Connecticut rule, specifically recognized that the landlord is not a guarantor for the safety of the tenant.

Mrs. Orth lists three issues which she believes prevented the granting of a motion for summary judgment: (1) whether the Smedleys had actual or constructive knowledge of the accumulation of ice; (2) whether the Smedleys had a reasonable opportunity in which to remove the accumulation of ice; and (3) whether the Smedleys were negligent in failing to remove the accumulation of ice. The record fully resolves each of those issues adversely to Mrs. Orth. The trial court did not err in granting the Smedleys' motion for summary judgment.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 378 N.E.2d 20.