Brenda BELL, Appellant–Plaintiff,

v.

GRANDVILLE COOPERATIVE, INC., and Kirkpatrick Management Company, Inc., Appellees–Defendants.

No. 49A04–1101–CT–2.

Court of Appeals of Indiana.

June 10, 2011.

Jon C. Abernathy, Andrew B. Janutolo, Goodin Abernathy, LLP, Indianapolis, IN, Attorneys for Appellant.

Ronald J. Semler, Stephenson Morow & Semler, Indianapolis, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Brenda Bell appeals the trial court's grant of summary judgment in favor of

Grandville Cooperative, Inc., and Kirkpatrick Management Company, Inc. (collectively "Grandville"), in her personal injury negligence action against Grandville. We reverse and remand.

## Issue

The sole restated issue is whether there is a genuine issue of fact as to whether Grandville breached a duty owed to Bell.

## Facts

The designated evidence most favorable to Bell as summary judgment nonmovant is that on February 21, 2007, at approximately 4 p.m., Bell arrived at her daughter's apartment complex in Indianapolis, owned and managed by Grandville, in order to babysit her grandchild. At that time, the temperature was in the 40's, and Bell did not notice any ice or melting water anywhere along the way from her car to her daughter's apartment. However, there were piles of snow in the apartment complex from earlier snowfalls, and for the previous three or four days the piles had been melting during the day and re-freezing in patches on sidewalks and parking areas during the night and early morning hours.

In fact, ice had formed earlier that morning in the area where Bell had parked her car, and maintenance personnel had placed ice melt on it that morning. Bell's daughter also had informed Grandville management on several previous occasions that ice tended to form in the precise location where Bell parked her car. That afternoon, the maintenance supervisor for Grandville performed an ice check on the sidewalks and parking areas at about 4:30 p.m. and did not find any ice, and no ice melt was placed anywhere in the complex. Grandville maintenance personnel left the complex for the day at 5 p.m.

Bell's daughter returned from work around midnight. According to readings from the Indianapolis International Airport, the air temperature at the time was above freezing. Bell initially did not see any ice on the walk back to her car. However, when Bell reached her car, she slipped and fell on a patch of ice that had formed near the front driver's side of the car. Bell was taken by ambulance to a hospital to be treated for injuries she suffered in the fall.

On October 3, 2008, Bell sued Grandville, alleging it had been negligent in the maintenance of the apartment complex premises. Grandville subsequently moved for summary judgment, contending it had not, as a matter of law, breached any duty owed to Bell. On November 5, 2010, the trial court entered summary judgment in favor of Grandville. Bell now appeals.

## Analysis

We apply the same standard as the trial court when determining whether a motion for summary judgment should have been granted. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4–5 (Ind.2010). Namely, summary judgment should be granted only if the designated evidence shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* at 5. "All factual inferences must be construed in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party." *Id.* Summary judgment is rarely appropriate in negligence actions, because " 'negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence.' " *Id.* at 10 (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind.2004)). We also note that the trial court entered findings of fact and conclusions thereon in granting Grandville's summary judgment motion. Those findings are not binding

upon us and do not alter the traditional standard of review for summary judgment rulings. *See Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996).

■■■ To prevail on a negligence claim a plaintiff must show: (1) a duty owed to the plaintiff by defendant; (2) breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Kroger,* 930 N.E.2d at 6. The parties here agree that Grandville owed a duty of care to Bell, and the sole issue for summary judgment was whether Grandville did not breach that duty as a matter of law.[1] The parties also agree that the scope of the duty Grandville owed to Bell is governed by the duty of care that a landowner owes to invitees upon the property. That duty is defined as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads,* 569 N.E.2d 637, 639–40 (Ind.1991) (quoting Restatement (Second) of Torts § 343 (1965)).

Neither party relies upon Restatement (Second) of Torts § 360, which states:

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

Bell, of course, did not have a tenant-landlord relationship with Grandville, but Section 360 also applies to persons, such as Bell, "lawfully upon the land with the consent of the lessee...." The liability standards for both Section 343 and 360 of the Restatement are very similar. The primary difference appears to be that Section 343 imposes a requirement that the landowner "should expect that [a plaintiff] will not discover or realize the danger, or will fail to protect themselves against it," while Section 360 has no such requirement. Grandville makes no argument under that part of Section 343.

More particularly, several Indiana cases have discussed the extent of a landlord or business owner's responsibility to clear areas such as sidewalks and parking lots from natural accumulations of ice and snow. In *Hammond v. Allegretti,* 262 Ind. 82, 311 N.E.2d 821 (1974),[2] our supreme

---

1. Grandville also effectively concedes, at least for summary judgment purposes, that Bell did in fact slip on ice and injure herself.

2. *Hammond* arguably was disapproved of on other grounds by *Burrell.* to the extent *Hammond* may have relied upon the "economic benefit test" to define the scope of premises

liability "invitees." *See Burrell.* 569 N.E.2d at 641. That disapproval does not affect *Hammond's* analysis regarding landowner responsibility to remove natural accumulations of ice and snow; if anything *Burrell* simply expands that analysis to apply to social guests of landowners. *See id.* at 643.

court addressed a case in which the plaintiff slipped and fell on ice that had accumulated in a business's parking lot. The court indicated that it was following Section 343 of the Restatement and ultimately held that, although it did not intend to impose strict liability upon business owners with respect to always having to immediately remove natural accumulations of ice and snow from the premises,

> What we are advocating is that there be a duty imposed upon the landowner-inviter to exercise reasonable care in the maintenance of business premises. This duty should obtain as a matter of law in all cases arising out of the inviter-invitee context. Ultimate legal liability is, of course, another matter, separate and distinct from the existence of a legal duty. There will be situations when the natural accumulation of ice and snow will render the inviter liable, and others when it will not. The critical point to be made is that the condition of the premises and the actions taken or not taken by the inviter and invitee must all be considered by the trier of fact in determining the existence or non-existence of legal liability. To preclude the trier of fact's consideration of the condition of the premises at the time of the accident is to unnecessarily and unjustifiably dilute a well-established principle of tort law.

*Hammond,* 262 Ind. at 88–89, 311 N.E.2d at 826. *Hammond,* therefore, seems to contemplate a general duty for business owners to remove ice and snow from their premises, with the question of whether that duty has been breached to be left to a trier of fact.

In *Orth v. Smedley,* 177 Ind.App. 90, 378 N.E.2d 20 (1978), this court addressed a case involving a slip and fall on ice in the context of landlord-tenant relationships. Specifically, sometime after midnight on a January night, there was a freezing rain that left ice outside of an apartment building, and upon which a tenant/plaintiff slipped and fell at 6 a.m. This court analyzed the plaintiff's claim of negligence without citing *Hammond* and instead turned to the so-called "Connecticut Rule" regarding landlord liability for removing accumulations of ice and snow from common areas, citing a Rhode Island case stating the rule as follows:

> "a landlord is not a guarantor for the safety of his tenants as they proceed along the common ways. What we do say, however, is that an accumulation of ice or snow upon those portions of the premises reserved for the common use of his tenants may make the landlord liable for injuries sustained by his tenant which are due to such an accumulation, provided the landlord knows, or should have known, of the condition and failed to act within a reasonable time thereafter to protect against injuries caused thereby. The mere accumulation of snow or ice does not ipso facto make the landlord liable; he must be given a reasonable time after the storm has ceased to remove the accumulation of snow or ice found on the common ways or to take such measures as will make the common areas reasonably safe from the hazards arising from such a condition. . . ."

*Orth,* 177 Ind.App. at 94–95, 378 N.E.2d at 23 (quoting *Fuller v. Housing Auth. of Providence,* 108 R.I. 770, 279 A.2d 438, 441 (1971)).[3] Stated another way, "The Con-

---

**3.** The "Connecticut Rule" was established in *Reardon v. Shimelman,* 102 Conn. 383, 128 A. 705 (1925). It represented an expansion of liability for landlords beyond the "Massachu-

setts Rule," which states that a landlord has *no* duty to remove any natural accumulation of snow and ice from common areas. *Fuller.* 279 A.2d at 440.

necticut rule recognizes that the landlord is entitled to actual or constructive notice of the presence of ice and snow and is also entitled to reasonable opportunity to remove the ice and snow." *Id.* at 95, 378 N.E.2d at 23. Under that standard, we held as a matter of law that the landlords had not breached their duty to the tenant/plaintiff in failing to treat the ice, because the ice had formed unexpectedly in the middle of the night when the landlords and their agents were asleep. *Id.* at 96, 378 N.E.2d at 24. We stated, "[a]n ordinary prudent person would not stand guard over the premises constantly." *Id.* at 96, 378 N.E.2d at 24.

In *Rossow v. Jones*, 404 N.E.2d 12, 14 (Ind.Ct.App.1980), relying upon *Hammond*, this court held, "a landlord does have a duty of reasonable care that the common ways and areas, or areas over which he has reserved control, are reasonably fit and that hazards created through a natural accumulation of ice and snow are not beyond the purview of that duty." We further concluded there was sufficient evidence the landlord had breached this duty where he had not cleared a stairwell that had been accumulating ice and snow for a week. *Id.* In a separate concurrence, Judge Staton quoted a passage from *Fuller* that was not quoted in *Orth*, which states,

> We fail to see the rationale for a rule which grants a seasonal exemption from liability to a landlord because he has failed to take adequate precautions against the hazards that can arise from the presence of unshoveled snow or unsanded or salt-free ice found in the areas of his responsibility but yet hold him liable on a year-round basis for other types of defects attributable to the workings of mother nature in the very same portions of his property.

*Id.* at 16 (Staton, J., concurring).

Finally, and more recently, the United States District Court for the Southern District of Indiana, in a diversity jurisdiction case, decided *Rising–Moore v. Red Roof Inns, Inc.*, 368 F.Supp.2d 867 (S.D.Ind. 2005). There, a plaintiff went inside to check in at a motel just as freezing rain was beginning to fall. The plaintiff was inside for five to twenty minutes, and when he went back outside to go to his room, he slipped and fell on ice. The district court granted summary judgment to the motel on the plaintiff's negligence complaint, concluding that no reasonable jury could have found the motel breached its duty to the plaintiff to clear ice and snow where the time frame involved was a matter of minutes and the weather situation was still developing. *Rising–Moore*, 368 F.Supp.2d at 874. In affirming the district court, the Seventh Circuit additionally observed, "Only a duty of continuous monitoring and clearing during a winter storm would make an owner liable under these circumstances, and there is no such duty in Indiana." *Rising–Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 817 (7th Cir.2006).[4]

---

**4.** We note that both parties cite and rely on cases concerning lawsuits against governmental entities, their responsibility to clear weather-related hazards from roads, parking lots, and sidewalks, and whether those entities were immune from liability under the Indiana Tort Claims Act ("ITCA"). *See, e.g., Bules v. Marshall County*, 920 N.E.2d 247 (Ind.2010); *Gary Community School Corp. v. Roach–Walker*, 917 N.E.2d 1224 (Ind.2009); *Catt v. Board of Comm'rs of Knox County*, 779 N.E.2d 1

(Ind.2002); *Smithson v. Howard Reg'l Health Sys.*, 933 N.E.2d 1 (Ind.Ct.App.2010). The cases all addressed a particular exemption from liability that applies only to governmental entities under ITCA, i.e., a governmental entity is not liable if a loss results from the temporary condition of a public thoroughfare that results from weather. Ind.Code § 34–13–3–3(3). The ITCA cases also proceeded on the assumption that the governmental entities were in fact negligent, as governmental im-

■ Turning to the evidence here most favorable to Bell, she designated evidence that in the previous three to four days before her fall, piles of snow in the apartment complex had been melting during the day and re-freezing and creating icy patches during the night. Additionally, the area where Bell fell was an area where ice regularly formed. It had been treated with ice melt on the morning before her fall, and Bell's daughter had informed Grandville management on "numerous" prior occasions that ice tended to form in that area. App. p. 52. Despite this pattern of ice forming in the apartment complex on a regular basis in the prior three or four days, and in the specific area where Bell fell, Grandville took no steps that might have prevented the formation of ice in that area, such as proactively placing ice melt in the area, nor is there any evidence any Grandville maintenance worker checked the grounds for ice formation at any time after 5 p.m. on February 21st and before 8 or 8:30 a.m. on the 22nd.

We conclude the evidence here is considerably different than that in either *Orth* or *Rising–Moore*. This was not a situation in which a sudden change in weather occurred in the middle of the night, or where ice formed suddenly and with little-to-no warning before a person slipped and fell on it. There was an established pattern of ice forming in the Grandville complex for several days, and for much longer than that even with respect to the area where Bell slipped and fell. Grandville did not do anything to counteract the possibility of ice forming on the premises between the hours of 5 p.m. and 8 a.m.

Although there appear to be no Indiana cases with a fact pattern identical to this one, we discovered a highly-similar case from Missouri, *Braun v. George C. Doering, Inc.*, 907 S.W.2d 371, 373 (Mo.Ct.App. 1995), *error denied*. Missouri, much like Indiana, requires that before a landlord may be held liable for failing to correct a hazardous situation on the premises, including weather-related situations, the landlord must have had either actual or constructive knowledge of the condition and have had sufficient time to correct the condition. *Braun*, 907 S.W.2d at 373. Missouri also recognizes, as do our courts, that "[a] landlord is not the absolute insurer of his or her premises." *Id.*

The question on appeal in *Braun*, after a jury verdict in favor of the plaintiff, was whether there was any evidence to support a finding that the defendant/landlord had actual or constructive of a dangerous condition on the premises. *Id.* The facts were that at 2 a.m., the plaintiff, an employee of a tenant, slipped and fell on ice that had formed in a parking lot maintained by the landlord. Specifically, the ice had formed from piles of snow that melted during the day and re-froze during the night. The landlord was aware of the risk of melting and re-freezing, but had not salted or sanded the area where the plaintiff had slipped and fallen. After the plaintiff sued the landlord in negligence, the jury returned a verdict in the plaintiff's favor. The *Braun* court affirmed, holding, "there was sufficient evidence presented for a jury to determine that Defendants had constructive notice that there was a dangerous condition which Defendants could have made safe through the exercise of reasonable care." *Id.* at 374. The court

munity presumes duty and breach of duty. *Bules*, 920 N.E.2d at 251. In other words, ITCA imposes an additional requirement upon plaintiffs seeking to recover from governmental entities for failures to clear or treat weather-related hazards that does not apply to private parties, such as Grandville. We believe these cases have little to no relevance to the present case and will not discuss them further.

noted that the landlord was aware of the risk of melting and re-freezing snow and had taken steps in the past to treat refrozen ice, but had not taken any steps to do so on the night in question in the area where the plaintiff fell. The court concluded, "Defendants cannot avoid liability by simply claiming that they had no actual knowledge that the particular piece of ice Plaintiff stepped on had formed that evening. It follows that Defendants had constructive knowledge of this dangerous condition and failed to exercise reasonable care in making it safe." *Id.*

■ For all practical purposes, the facts in *Braun* are virtually indistinguishable from the facts here. Additionally, although the Missouri court's decision is not binding authority, it is highly persuasive, given the virtually identical standards for landlord liability in Missouri and Indiana. We also keep in mind that whether there has been a breach of duty in a negligence action generally is a question of fact inappropriate for resolution by summary judgment, unless the facts are undisputed and only one inference can be drawn from those facts. *Northern Indiana Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 466 (Ind. 2003). We do not believe this is such a case. *Hammond* also indicates that whether a landowner has breached its duty to maintain safe premises, with respect to removal of accumulations of ice and snow, usually should be reserved to the trier of fact. *See Hammond,* 262 Ind. at 89, 311 N.E.2d at 826. Given the facts most favorable to Bell that we have recounted and their striking parallel to *Braun,* we believe there is a question of fact as to whether Grandville breached its duty to maintain the premises in a reasonably safe condition. In other words, there is a question of fact as to whether Grandville had actual or constructive knowledge of a dangerous condition on the premises—which does *not* require that they knew of the actual formation of the ice patch Bell slipped upon— and whether it acted reasonably in response to such knowledge.

Grandville also seems to imply that once its maintenance workers ended their regular working day at 5 p.m. on February 21st that there was no need or obligation to provide any ice treatment after that time. We are not prepared to say, as a matter of law, that an apartment complex's duty to maintain safe premises only runs during the regular working hours of the complex's maintenance staff. Whether Grandville should have arranged for a maintenance worker to inspect the premises some time during the evening or early morning hours, where there was knowledge that ice had formed during the night in various spots throughout the complex in the previous three or four days, is a matter for the fact finder to consider. *See Robinson v. Park Central Apartments,* 248 F.Supp. 632, 637 (D.D.C.1965) (holding that whether landlord should have continued an employee working to address dangerous weather conditions after regular working hours was a question of fact, and that a person arriving at the premises after midnight would be "as much entitled to safe ingress as a person who had come home from his employment at 5 o'clock in the afternoon").

Finally, we address the evidence regarding the air temperature readings at the Indianapolis International Airport. Grandville contends that because the air temperature readings at both midnight and 1 a.m. were still above freezing that it could not have had constructive notice that ice might be forming at the complex. This argument is slightly perplexing, as Grandville does not dispute that ice had actually formed at the complex by that time, notwithstanding the above-freezing air temperature at the airport. It is unclear what

the relevance of the air temperature at the airport is to the formation of ice on the ground at a location several miles away. Certainly, this evidence does not compel the granting of summary judgment in Grandville's favor.

### Conclusion

There is an outstanding question of material fact as to whether Grandville breached its duty to Bell to maintain the apartment complex premises in a reasonably safe condition. We reverse the trial court's grant of summary judgment in Grandville's favor and remand for further proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J., and DARDEN, J., concur.