Clayter HALE, Appellant–Plaintiff,

v.

SS LIQUORS, INC. and Safe Step, Inc., Appellees–Defendants.

Safe Step, Inc., Cross–Claim Plaintiff,

v.

SS Liquors, Inc., Cross–Claim Defendant.

No. 73A01–1104–CT–179.

Court of Appeals of Indiana.

Nov. 15, 2011.

Thomas E. Hastings, Nicholas F. Baker, The Hastings Law Firm, Indianapolis, IN, Attorneys for Appellant.

Renee J. Mortimer, Jennifer Kalas, Hinshaw & Culbertson, LLP, Shererville, IN, Attorneys for Appellee, SS Liquors Inc.

Lynne D. Lidke, Thomas E. Schulte, Scopelitis Garvin Light Hanson & Feary, PC, Indianapolis, IN, Attorneys for Appellee, Safe Step, Inc.

## OPINION

BARNES, Judge.

### Case Summary

Clayter Hale appeals the trial court's grant of summary judgment in favor of SS Liquors, Inc. ("SS") and Safe Step, Inc. ("Safe Step"), in his personal injury negligence action against SS and Safe Step. We affirm.

### Issue

The sole restated issue is whether there is a genuine issue of material fact as to whether either SS or Safe Step breached a duty owed to Hale.

### Facts

SS owns and operates a Hampton Inn in Shelbyville. On August 29, 2008, Hale was a guest staying at the Hampton Inn when he slipped and fell in the bathtub while taking a shower, injuring himself. The bathtub was clean, and Hale did not notice there being any anti-slip devices or "circles" in the bottom of the bathtub.[1] App. p. 185. There was no handrail in the bathtub/shower. Hale does not know what caused him to slip and fall in the bathtub, aside from it being "slippery." *Id.* at 182. He did later state, however, that he did not think a handrail would have prevented his fall.

In March 2008, SS had contracted with Safe Step to perform "Safe Step Tub Treatment—Anti–Slip & Stain Removal" on all of the bathtubs at the Hampton Inn.App. p. 152. This project involved a Safe Step employee deep cleaning each bathtub and applying a chemical to it that "raises the pores of the tub to create an etch." *Id.* at 147. Safe Step did not apply any anti-slip mats, tape, or stickers to the tubs. The work on the bathtub in the room where Hale would stay was completed in April 2008.

On September 15, 2009, Hale filed a negligence lawsuit against SS; on November 13, 2009, Hale amended the complaint to add Safe Step as a defendant.[2] The complaint alleged that Hale's fall was the

---

1. Hale explained that by "circles," he was referring to "maybe a—not a ceramic but a rubberized thing that sticks to the bottom of the tub." App. p. 185.

2. Safe Step also filed a cross-claim against SS, seeking indemnification for having to defend against Hale's lawsuit pursuant to the terms of the SS–Safe Step contract. The trial court granted summary judgment in SS's fa-

result of an "excessively slick bathtub surface and the lack of proper handrails." *Id.* at 7. Pursuant to a discovery request, Hale hired an engineering company, NTA, Inc. ("NTA"), to inspect and test the bathtub in the room where Hale had stayed. The inspection and testing was conducted on January 11, 2010, to determine whether the bathtub was in compliance with the "American Society for Testing and Materials, Standard Consumer Safety Specification for Slip–Resistant Bathing Facilities," or ASTM F0462 for short. *Id.* at 81. The report NTA prepared observed, "The test surface was smooth with a pattern of grey circles extending in four lines down the length of the tub." *Id.* at 76. The report further stated with respect to these circles, "There appears to be some sort of buildup on the bottom of the tub intended as texturing. The buildup appears as four rows of circles down the length of the tub." *Id.* at 85. After testing the bathtub and analyzing the results, NTA concluded that it was in compliance with ASTM F0462.

Another engineer, H. Richard Hicks, reviewed NTA's report and compared it with statements Hale had made in a deposition, but Hicks did not personally inspect the bathtub. Hicks noted NTA's observation regarding the grey circles in the bathtub and Hale's deposition testimony that he did not notice any nonslip devices or "circles" in the bottom of the bathtub and stated:

> Textured surfaces and slip resistant material (appliques) attached to their surface are often used to improve the slip resistance of bathtub surfaces. . . . If the buildup appearing as 4 rows of circles down the length of the tub was not present when Mr. Hale fell, then: a) the bathtub surface inspected and tested by NTA on January 11, 2010 was not representative of the bathtub surface that existed at the time of Mr. Hale's fall . . .

and b) the buildup appearing as 4 rows of circles down the length of the tub was most likely placed there after Mr. Hale's fall for the purpose of increasing the slip resistance of the bathtub surface.

*Id.* at 221–22. Neither NTA nor Hicks gave any opinion as to whether the bathtub would have been compliant with ASTM F0462 without the grey circles in the bottom of it.

On October 29, 2010, SS and Safe Step both filed motions for summary judgment against Hale. On March 21, 2011, the trial court granted the motions and entered judgment against Hale. Hale now appeals.

### Analysis

When reviewing the propriety of a summary judgment ruling, we apply the same standard as the trial court. *Bell v. Grandville Coop., Inc.*, 950 N.E.2d 747, 748 (Ind. Ct.App.2011). Summary judgment should be granted only if the designated evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We must construe all factual inferences in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* It is often said that summary judgment is rarely appropriate in negligence actions, because of their fact-sensitive nature and because they are governed by a standard of the objective reasonable person, which is a standard best applied by a jury. *Id.* "However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim." *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind.Ct.App.2002). When a summary judgment movant designates evidence establishing prima facie that there are no genuine issues of material fact and that the movant is entitled to judgment as a

vor on this claim; resolution of that issue is not presented in this appeal.

matter of law, the responding party may not rest upon the mere allegations of his or her pleadings. *McDonald v. Lattire*, 844 N.E.2d 206, 212 (Ind.Ct.App.2006) (citing Ind. Trial Rule 56(E)).

 "To prevail on a negligence claim a plaintiff must show: (1) a duty owed to the plaintiff by defendant; (2) breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Bell*, 950 N.E.2d at 749. The sole issue presented in this case is whether SS and/or Safe Step breached a duty owed to Hale. SS's duty to Hale is defined by premises liability principles. Under those principles, the applicable standard of care that a hotel owes to its guests is that owed to a business invitee. *Booher v. Sheeram, LLC*, 937 N.E.2d 392, 395 (Ind.Ct.App.2010), *trans. denied.* In determining the standard of care owed to business invitees, Indiana has adopted Section 343 of the Restatement (Second) of Torts, which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind.1991) (quoting Restatement (Second) of Torts § 343 (1965)). Although a hotel owner has a duty to exercise reasonable care to protect its guests from harm, there is no duty to insure the guest's safety while on the premises. *Booher*, 937 N.E.2d at 395. Section 343 also expressly only requires a landowner to eliminate the "unreasonable" risk of harm, and thus it implicitly recognizes that some activities have a risk of harm that is "reasonable" that a landowner is not required to protect the invitee against.

 Safe Step's duty to Hale is slightly different than SS's, as it was not the owner of the property. Rather, its duty arose as an independent contractor performing work or repairs on another's property. As such, even after SS accepted Safe Step's work, Safe Step could be liable for an injury to Hale if Safe Step negligently completed the work and it was reasonably foreseeable that a third party would be injured by such work. *See Peters v. Forster*, 804 N.E.2d 736, 742 (Ind.2004).

Among the matters designated for summary judgment here were the NTA report on the condition of the tub, Hale's deposition, and an affidavit from Hicks. As noted, the NTA report stated that the bathtub was compliant with ASTM F0462, the industry standard for the safety of bathtubs, while Hale's deposition, combined with Hicks's affidavit, allegedly casts doubt on whether the bathtub was in a different condition at the time of Hale's fall than when it was inspected by NTA. Specifically, there is some confusion or debate about whether the bathtub had the grey circles on the bottom of it, noted by NTA, at the time of Hale's fall.[3] On appeal, Hale has

---

**3.** We observe that, contrary to Hale's assertion, he never definitively stated that the bathtub did not have the grey circles on the bottom of it at the time of his fall. His deposition testimony referred generally to the tub not having nonslip "circles," which he described as "maybe a—not a ceramic but a rubberized thing that sticks to the bottom of the tub." App. p. 185. This description may or may not have encompassed the grey circles described in NTA's report.

abandoned his claim that the bathtub was unsafe because it lacked a handrail.

The issue of whether or not the bathtub had either "stickers" or grey circles on it at the time of Hale's fall is, we believe, a red herring.[4] Hale asserts in his brief that, if in fact the grey circles were not present in the tub at the time of his fall, "the tub may not have met code requirements." Appellant's Br. p. 10. This is pure speculation, however. There is no evidence, expert or otherwise, that the tub would not have met "code requirements"—presumably the ASTM F0462 safety standard—if the grey circles were not present. Neither NTA's report nor Hicks's affidavit stated anything to that effect. Even if the grey circles decreased the likelihood of a fall, that does not by itself establish that the tub was unreasonably unsafe without the circles. In fact, even with the circles, NTA's report stated that slippage in the bathtub could still occur, indicating that even when a bathtub complies with industry standard safety specifications, the risk of falling while taking a shower is not completely eliminated.

Hale urges that this case is similar to one from our supreme court, *Lincoln Operating Co. v. Gillis*, 232 Ind. 551, 114 N.E.2d 873 (1953). In that case, a woman slipped, fell, and injured herself while taking a shower in a hotel bathtub. She sued the hotel in negligence, and our supreme court upheld a verdict in her favor. The woman, however, had specifically alleged that the hotel had failed to clean the bathtub after the previous guest had left and that the cause of her fall was apparently leftover soap in the tub, which she described as "just like grease" and "scummy and dirty." *Gillis*, 232 Ind. at 555, 114 N.E.2d at 875. Our supreme court stated in part,

While it is a matter of common experience that water makes an enamel or porcelain tub more slippery than a dry tub, it is also a matter of common experience that millions of people take baths in such tubs without ever falling or injuring themselves. It is also a matter of common experience that wet soap acts as a lubricant and makes a wet bathtub much more slippery than water alone.

*Id.* at 557–58, 114 N.E.2d at 876.

Thus, the plaintiff in *Gillis* presented evidence of a specific failure on the hotel's part that led to her fall and injury: not cleaning the bathtub before her check-in, which resulted in a dangerously slippery condition of the tub from the previous guest's leftover soap. Here, by contrast, Hale expressly stated in his deposition that the bathtub was clean when he took his shower, and he could not specify anything about the tub that might have caused his fall, other than it being slippery. As opposed to *Gillis*, the only evidence in this case is that the bathtub became slick while Hale showered—which is a risk inherent in showering—and there is no evidence that SS or Safe Step did or failed to do something that unreasonably increased that risk. *See LaBart v. Hotel Vendome Corp.*, 213 F.Supp. 958, 959 (D.Mass.1963) (distinguishing *Gillis* and finding no hotel liability for guest's slip and fall in bathtub where guest testified that tub was clean and that she did not observe any foreign substances in it).

Hale also relies upon *Golba v. Kohl's Dep't Store, Inc.*, 585 N.E.2d 14 (Ind.Ct. App.1992), *trans. denied*. In *Golba*, a customer at a Kohl's store slipped and fell in an aisle when she stepped on a round object of some kind, possibly a BB pellet, on a highly-polished floor. The customer

---

4. Hale repeatedly refers to the grey circles as "stickers" in his brief, although it is unclear that the circles could accurately be described as "stickers"; they were not so described in NTA's report.

filed a negligence action against Kohl's, and we reversed a grant of summary judgment in Kohl's favor, holding that there existed a material issue of fact as to whether Kohl's could have had constructive notice of the object on which the customer had slipped. *Golba,* 585 N.E.2d at 17. In reaching this decision, this court reviewed a number of cases from other jurisdictions regarding a store's obligation to maintain safe premises and stated, "These cases have generally found the plaintiff's testimony that she slipped on something sufficient to withstand summary judgment on the existence of a hazard." *Id.* at 16.

This statement was dicta, at least to the extent that it could be read as suggesting that a plaintiff's testimony that he or she slipped and fell on "something" in a defendant's establishment, without identifying any possible cause for the fall, is sufficient to survive summary judgment. There was in *Golba* actual evidence of what had caused the plaintiff's fall—debris on a very highly polished floor. Generally, Indiana courts require some evidence of what caused a plaintiff's fall in order to survive summary judgment in a slip-and-fall case. For example, in *Midwest Commerce Banking Co. v. Livings,* 608 N.E.2d 1010 (Ind. Ct.App.1993), we held that a bank was entitled to summary judgment on a customer's slip-and-fall negligence claim, where the plaintiff did not designate any facts specifying what had caused her fall or identify any negligent behavior on the bank's part. We observed, "absent factual evidence, negligence cannot be inferred from the mere fact of an accident." *Id.* at 1013. *See also Ogden Estate v. Decatur County Hosp.,* 509 N.E.2d 901, 903 (Ind. Ct.App.1987) (affirming summary judgment for defendant in slip-and-fall case and stating, "Negligence cannot be established by inferential speculation alone."), *trans. denied; Wright Corp. v. Quack,* 526 N.E.2d 216, 218–19 (Ind.Ct.App.1988) (re-

versing jury verdict in favor of plaintiff in slip-and-fall case where plaintiff failed to present any evidence of a foreign substance on the floor or that defendant had negligently maintained its floors and stating, "The mere allegation of a fall is insufficient to establish negligence . . . ."), *trans. denied.*

In essence, although Hale does not use the phrase, he is asking that his case be allowed to proceed under some version of res ipsa loquitur. "[R]es ipsa loquitur permits an assumption that in some situations an occurrence is so unusual that, absent a reasonable justification or explanation, those persons in control of the situation should be held responsible." *Cergnul v. Heritage Inn of Indiana, Inc.,* 785 N.E.2d 328, 331 (Ind.Ct.App.2003), *trans. denied.* The doctrine, if its elements are met, allows a permissive inference of negligence. *Id.* "Before the doctrine will apply, the plaintiff must present evidence that (1) the injuring instrumentality is under the exclusive control of the defendant, and (2) the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care." *Id.* "By the same token, negligence may not be inferred from the simple fact that an injury occurred." *Id.* The doctrine of res ipsa loquitur generally is inapplicable in slip-and-fall cases. *Ogden,* 509 N.E.2d at 904.

We are not prepared to say that slipping and falling in a bathtub while taking a shower is something that does not happen "in the ordinary course of things." Res ipsa loquitur does not apply here. We believe that, if the mere fact of a fall is insufficient to establish liability of a landowner for a customer's injuries in an ordinary case involving regular floors, it should be doubly true in a case involving a fall in a shower, which necessarily involves a slippery surface. There is no evidence

whatsoever that the bathtub as it existed at the time of Hale's fall was unreasonably unsafe, as compared to bathtubs generally. Additionally, there is no evidence that anyone else ever fell in one of the Shelbyville Hampton Inn's bathtubs before Hale's accident, which arguably could have required SS to investigate whether it needed to take measures to increase the safety of the tubs. *See Booher*, 937 N.E.2d at 395–96 (holding hotel discharged its duty to address complaints of slippery bathtubs where it hired an expert to fix the problem, and there were no accidents or complaints between time of fix and plaintiff's slip-and-fall in bathtub five months later). There is no designated evidence that either SS or Safe Step breached any duty owed to Hale with respect to the safety of the bathtub in which he slipped and fell, and SS and Safe Step therefore are entitled to judgment as a matter of law.

### Conclusion

The trial court properly granted SS and Safe Step's motions for summary judgment against Hale. We affirm.

Affirmed.

ROBB, C.J., and BRADFORD, J., concur.