

FILED

May 07 2018, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert A. Plantz
Robert A. Plantz & Associates, LLC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Kimberly P. Peil
Lauren K. Kroeger
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Frances Dehoyos,

*Appellant-Plaintiff,*

v.

Golden Manor Apartments,

*Appellee-Defendant.*

May 7, 2018

Court of Appeals Case No.
45A05-1711-CT-2721

Appeal from the Lake Superior
Court.
The Honorable John M. Sedia,
Judge.
Trial Court Cause No.
45D01-1509-CT-169

**Darden, Senior Judge**

## Statement of the Case

[1]  Frances Dehoyos appeals the trial court's grant of summary judgment in favor of Golden Manor Apartments.  We reverse and remand.

## Issue

Dehoyos raises one dispositive issue, which we restate as: whether the trial court erred in granting Golden Manor's motion for summary judgment.

## Facts and Procedural History

Golden Manor is a senior citizen living facility located in Hammond, Indiana. During the winter of 2013, Golden Manor's maintenance staff would generally arrive at work at 8:00 a.m. to inspect the parking lot and sidewalk for ice and snow. In its response to Dehoyos' interrogatories, Golden Manor indicated that its policy was to have staff also apply salt to sidewalks as needed. Golden Manor had also contracted with Meier Snow Plow Company to clear snow from the parking lot and to apply salt to sidewalks and the parking lot. However, under the terms of the contract, Meier performed ice melting applications only when directed by Golden Manor.

Dehoyos lived at Golden Manor. Earlier, in 2013, she had experienced a situation wherein Golden Manor's management had failed to ensure that snow was removed from the sidewalks. As she walked toward the building, she found herself up to her ankles in icy snow. On that occasion, the building's manager helped her walk through the snow and ice. On other occasions, Dehoyos observed that Golden Manor's management failed to clean snow and ice off sidewalks "until late afternoon." Appellant's App. Vol. II, p. 49. She had also heard other residents complain about a lack of timeliness in clearing off ice and snow on the premises.

[5] On the morning of Sunday, December 29, 2013, there was snow on the ground, and it had been there for a few days. It was cold. Meier's workers had applied salt at Golden Manor over the previous several days. There is no evidence that Golden Manor's staff inspected the sidewalks or applied salt on the morning of December 29, 2013. Between 10:00 a.m. and 11:00 a.m., Dehoyos exited Golden Manor's building. The door she used opened onto a sidewalk that led to the parking lot. A portion of the building's downspout was located on top of the sidewalk.

[6] Dehoyos took approximately two steps onto the sidewalk and then slipped and fell on ice, striking her head. Although the sidewalk had initially appeared clear, there was a "glaze" of ice on it. *Id.* at 41, 46. Dehoyos bled from a cut on her head. She managed to return to her apartment and called her children, and was taken to the hospital. She also sustained an injured ankle. Further, after the fall Dehoyos began experiencing recurring headaches and neck pain.

[7] It appears from Golden Manor's phone records that Golden Manor called Meier shortly before 11:00 a.m. It further appears that Meier's employees went to Golden Manor shortly thereafter and again at approximately 3:30 p.m. that day and applied two bags of salt at some point during those visits. On the next day, December 30, 2013, Meier's workers returned to Golden Manor and spread six bags of salt on the sidewalks.

[8] On September 23, 2015, Dehoyos sued Golden Manor, alleging negligence arising from the icy condition of the premises. Golden Manor filed an answer,

and the case progressed. Golden Manor took Dehoyos' deposition in January 2017. Next, Golden Manor filed a motion for summary judgment with a supporting memorandum of law and a designation of evidence. Dehoyos filed a response, a memorandum of law, and designation of materials, which included her affidavit.

[9] Golden Manor filed a reply. In addition, Golden Manor moved to strike a portion of Dehoyos' affidavit and a portion of Dehoyos' response to Golden Manor's motion for summary judgment. The trial court held oral argument, after which it granted Golden Manor's motion to strike. The trial court also granted Golden Manor's motion for summary judgment. The trial court concluded, "there is no dispute of material fact "that Golden Manor knew that a condition existed that created an unreasonable danger to DeHoyos [sic], or should have discovered the condition and its danger." *Id.* at 16. This appeal followed.

## Discussion and Decision

[10] Dehoyos argues the trial court erred in concluding there were no disputes of material fact. She claims there is ample evidence Golden Manor knew or reasonably should have known of the ice on which she fell and failed to take reasonable steps to protect her against that danger.

[11] We review summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We construe the evidence in favor of the nonmovant and resolve all doubts against the moving party. *Pfenning v. Lineman*, 947 N.E.2d 392, 397 (Ind. 2011) (quotation omitted). The party moving for summary judgment bears the initial burden to establish its entitlement to summary judgment. *Id.* at 396-97. Only then does the burden fall upon the nonmoving party to set forth specific facts demonstrating a genuine issue for trial. *Id.* at 397 (quotation omitted).

[12] The summary judgment process is not a summary trial. *Hughley*, 15 N.E.3d at 1003-04. Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims. *Id.* at 1004. Further, summary judgment is rarely appropriate in negligence cases because such cases are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Kramer v. Catholic Charities of Diocese of Fort Wayne-South Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015). Nevertheless, a grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the trial court erred. *Id*. (quotation omitted).

[13] Dehoyos' premises liability claim against Golden Manor is grounded in negligence. To recover on a negligence claim, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 19 (Ind. Ct. App. 2015).

In Indiana, a person entering onto the land of another is an invitee, a licensee, or a trespasser, and the entrant's status on the land determines the duty that the landowner owes to said person. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991). The parties do not dispute that Dehoyos was an invitee of Golden Manor because she resided on its property. A property owner has a duty to maintain its property in a reasonably safe condition for business invitees. *Miller*, 45 N.E.3d at 20. Liability for breach of the duty to maintain property is established as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* at 20 (quoting Restatement (Second) of Torts § 343). "'[T]he duty of reasonable care owed by an inviter to an invitee should in no way be diminished by the presence of natural accumulations of ice and snow.'" *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 316 (Ind. Ct. App. 2014) (quoting *Poe v. Tate*, 161 Ind. App. 212, 215, 315 N.E.2d 392, 394 (1974)), *trans. denied*.

The key question is whether Golden Manor breached its duty to Dehoyos to maintain its property in a reasonably safe condition. Whether an act or

omission is a breach of duty is generally a question of fact for a jury. *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). It is a question of law only if the facts are undisputed and a single inference can be drawn from those facts. *Id.*

[16] The Court has previously addressed premises liability cases involving invitees who fell on snow and ice. In the *Miller* case, Miller was staying at a motel and went outside to get in her car. 45 N.E.3d at 16. She saw snow on the ground, and the parking lot was icy. Miller walked to her car via a salted sidewalk and decided to move her car closer to the motel. Next, Miller got out of her car, and she fell as she stepped onto a slick curb. She sued, claiming negligence based on premises liability. The motel prevailed on summary judgment at the trial court, but the Court reversed. The Court concluded there were disputes of material fact as to whether the motel should have anticipated that an invitee such as Miller would walk in the parking lot and on sidewalks despite the risk of danger. Further, the Court determined there were disputes as to whether the motel knew or reasonably should have known that the sidewalk was unsafe.

[17] Similarly, in the *Henderson* case, a hospital's maintenance staff was notified early one winter morning that slick patches were present in the parking lot. 17 N.E.3d at 313-14. They assembled a crew, who spread salt on the hospital's parking lots and sidewalks. Henderson parked in the hospital's lot and slipped on a patch of ice as she got out of her car, falling to the ground. Security personnel later notified the maintenance staff that the parking lot was insufficiently salted. The trial court granted summary judgment to the hospital,

but the Court reversed. The Court concluded there were disputes of material fact as to whether the hospital acted reasonably in response to the ice on its property as to invitees.

[18] In *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 872 (Ind. Ct. App. 2011), Christmas visited a physical rehabilitation center. He walked through snow and water in a parking lot and then stepped onto a sidewalk that appeared to be covered in water. The substance was actually ice, and Christmas slipped and fell. He had noticed salt on the ground next to the area where he fell. The trial court granted summary judgment to the center, but the Court reversed. Among other conclusions, the Court determined there were genuine disputes of material fact as to whether the rehabilitation center knew or reasonably should have known of the condition and the harm it posed to invitees and failed to exercise reasonable care to protect against the danger.

[19] Also in 2011, the Court issued a decision in *Bell v. Grandville Coop., Inc.*, 950 N.E.2d 747 (Ind. 2011). In that case, in February 2007 Bell was babysitting her grandchild at an apartment complex. There were piles of snow in the parking lot that had melted and refrozen over the past few days, and on the morning at issue the complex's maintenance staff had placed ice melt around the complex. Bell's daughter, who lived in the complex, had previously informed the complex's managers that ice tended to form in the parking lot outside her building. As Bell walked to her car, she slipped and fell on the ice, suffering injuries. The trial court granted summary judgment to the apartment complex, but the Court reversed. The Court concluded there was a dispute of material

fact as to whether the complex knew or should have known of the threat of ice to invitees and took reasonable steps to address it.

[20] By contrast, in *Orth v. Smedley*, 177 Ind. App. 90, 378 N.E.2d 20 (1978), a panel of the Court affirmed the trial court's grant of summary judgment to a landlord in a renter's action for premises liability. The renter, Orth, left her apartment at 6:00 a.m. on a day in January. It had rained the night before, and the rain had frozen into ice. Orth slipped and fell on an icy patch of driveway, breaking her arm. She saw the ice before stepping on it but was trying to reach a car where her coworker was waiting. The landlords did not wake up until 7:30 a.m. The Court concluded there was no dispute of material fact as to whether the landlords had actual or constructive knowledge of the danger the ice posed to invitees because the landlords had not yet woken up and were unaware it had stormed and then frozen the night before.

[21] To summarize, in the *Henderson*, *Christmas*, and *Bell* cases, the Court took note of evidence that employees and contractors of the defendants had been aware of icy and snowy ground and tried to address it, thus giving rise to disputes of material fact as to whether: (1) the defendants were aware or reasonably should have been aware of the danger; and (2) took reasonable steps to correct it. By contrast, in the *Orth* case the property owners were asleep when ice formed at their property, and there was no dispute of material fact as to whether the property owners reasonably should have been aware of the danger to their invitee.

[22] The current case more closely resembles the *Miller*, *Henderson*, *Christmas*, and *Bell* cases rather than the *Orth* case. Golden Manor does not dispute the fact that it operated a senior citizen living center and had contracted with Meier Snow Plow Company to clear snow from the building's parking lot and to apply salt on its sidewalks only as directed by Golden Manor. Earlier in 2013, Dehoyos alleges that she had encountered trouble with ice and snow, and the building's manager had assisted her in walking through a dangerous area. In addition, she alleges that she had noticed inadequate efforts to remove ice and snow at the building. At times, snow and ice was not removed until the afternoon. In addition, Dehoyos claimed she had heard complaints from others on that topic.

[23] On the morning of December 29, 2013, snow remained on the ground at Golden Manor and had been there for several days. Meier employees had applied salt to Golden Manor sidewalks over the past several days. Between 10 a.m. and 11 a.m. on December 29, Dehoyos fell on a sidewalk that initially looked safe but had a glaze of ice on it. Dehoyos' inability to see the ice further distinguishes this case from the *Orth* case, where the plaintiff saw the ice but chose to walk on it anyway.

[24] The record indicates that shortly before 11:00 a.m., Golden Manor called Meier. Afterwards, Meier's employees went to Golden Manor twice that day, and apparently spread two bags of salt on the sidewalk during their visits. On the next day, December 30, Meier spread six bags of salt on the sidewalks.

[25]     We conclude from the foregoing evidence that there are disputes of material fact as to whether Golden Manor knew or reasonably should have known on the morning of December 29, 2013, of the risk posed by ice on the sidewalk where and before Dehoyos fell and whether Golden Manor took reasonable care to address the risk.

[26]     Golden Manor argues Dehoyos has failed to provide any evidence showing when the ice formed, speculating that it could have formed after Golden Manor's building staff was supposed to have inspected the property in the morning. Golden Manor points to no evidence that its staff did, in fact, inspect the sidewalks before 10:00 a.m. the morning of December 29, 2013. It is undisputed that cold winter conditions existed at the time of the incident and that snow had been present at Golden Manor for several days. Further, Dehoyos testified in her deposition that it was cold outside and had been for several days. Given this evidence, and Golden Manor's failure to point to any evidence of drastic weather changes on the morning of December 29, one could reasonably infer that the ice formed prior to Dehoyos' slip and fall on the morning of December 29. Dehoyos has carried her burden of demonstrating error in the trial court's grant of summary judgment.

[27]     Dehoyos also argues the trial court erred in granting Golden Manor's motion to strike, but we do not need to address that issue. There is other evidence in the record that amply establishes disputes of material fact, and we do not need to consider the statements that Golden Manor moved to strike.

# Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand for further proceedings.

Reversed and remanded.

Baker, J., and Altice, J., concur.