

ATTORNEYS FOR APPELLANT

James J. Kenney
Saunders, Condon & Kenney, P.C.
Chicago, Illinois

Rori L. Goldman
Justin O. Sorrell
Hill Fulwider, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Cathleen M. Shrader
Thomas M. Kimbrough
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jill Miller,

*Appellant-Plaintiff*,

v.

Rosehill Hotels, LLC d/b/a
Holiday Inn Express;
Intercontinental Hotel Group
d/b/a Holiday Inn Express,

*Appellees-Defendants.*

October 6, 2015

Court of Appeals Case No.
48A02-1504-CT-246

Appeal from the Madison Circuit
Court

The Honorable Dennis D.
Carroll, Judge

Trial Court Cause No.
48C06-1301-CT-19

**Brown, Judge.**

[1] Jill Miller appeals the trial court's entry of summary judgment in favor of Rosehill Hotels, LLC d/b/a Holiday Inn Express and Intercontinental Hotel Group d/b/a Holiday Inn Express (together, the "Hotel") and the denial of her motion to correct error. Miller raises one issue which we revise and restate as whether the court erred in entering summary judgment in favor of the Hotel and abused its discretion in denying her motion to correct error. We reverse and remand.

## Facts and Procedural History

[2] At about 8:00 or 8:30 a.m. on January 19, 2011, Miller exited the Holiday Inn Express in Anderson, Indiana, where she had stayed the previous night. Miller observed a "dusting of snow" and walked to her vehicle, which was approximately thirty feet from the carport. Appellant's Appendix at 33. By the time she reached her vehicle, she noticed that the parking lot was a "little slick." *Id.* at 35. She entered her vehicle, listened to a weather report on the radio, and then cancelled a work appointment scheduled for that day. She then moved her vehicle as close as she could to the carport or sidewalk near the carport, exited her vehicle, closed the door, and walked behind another car and approximately fifteen to seventeen feet to the sidewalk. As she stepped from the parking lot up onto the sidewalk, Miller slipped and fell.

[3] On January 15, 2013, she filed a complaint against the Hotel alleging in part that it was guilty of the careless or negligent acts or omissions of failing to remove ice or snow from the entrance and exit way from the premises, to provide a safe area for her to walk after she had exited her car and was walking

to the hotel, to properly remove ice or snow from the designated walkway of the premises, to warn her of any obstacles present in the path of the entrance and exit for the premises, and to make a reasonable inspection of the premises when it knew or should have known that inspection was necessary to prevent the premises from becoming dangerous. The Hotel filed an answer and asserted affirmative defenses including that Miller incurred or assumed the risk of the accident and injuries and that her own negligence caused or contributed to the alleged accident.

[4] On October 27, 2014, the Hotel filed a motion for summary judgment, a brief in support of its motion, and supporting evidence. An entry in the chronological case summary (the "CCS") dated October 29, 2014, states that Miller had thirty days after service of the Hotel's motion for summary judgment to respond in accordance with Ind. Trial Rule 56 and that, if no timely response was filed, the Hotel's motion may be granted without further notice or hearing.

[5] On November 19, 2014, Miller filed a motion for an enlargement of time, and the court granted her motion and ordered Miller to file her response to the Hotel's summary judgment motion on or before January 20, 2015. On February 10, 2015, Miller filed her own motion for summary judgment arguing that the Hotel had breached its duty to exercise reasonable care as a matter of law.

[6] In support of its summary judgment motion, the Hotel designated selected pages of Miller's deposition. In her deposition, when asked to describe what

happened, she testified that she had gathered her things to go to meetings, that she went outside, that "[t]he ground was snow covered," and that she walked to her vehicle. *Id.* at 31. She testified her vehicle "was parked maybe 30 feet to the right from the carport, and . . . about one row out." *Id.* She testified that she entered her vehicle and turned on the radio to listen to the weather report and that the report "was kind of sketchy for the day." *Id.* She testified "[s]o [she] called [her] contact . . . and let him know that [she] was not going to come, because it was a pretty hefty drive from Anderson to the [] facility that [she] was going to" and "told him [she] was not going to come in, because the weather sounded like it was not great and going to get worse that day." *Id.* She also testified that she believed she sent an email message to her boss to tell him she "was cancelling the conference call because [she] wasn't willing to die for him." *Id.* Miller further testified that she "moved [her] car as close as [she] could to the carport, the sidewalk that comes from the carport, and gathered [her] things," that she "got [her] coffee and [her] backback," and that she "stepped out of the vehicle went to step up on the curb and went down." *Id.* at 32.

[7] When asked if she had checked the weather conditions before she departed the hotel, Miller replied, "I did not. I looked outside," and when asked what she saw, she stated "[a] dusting of snow." *Id.* at 33. When asked what she meant by her statement that she cancelled her meeting because she did not want to die, she answered "I felt like it was probably going to get bad out, and I didn't – it was treacherous." *Id.* at 34. When asked if it was "going to get bad out" or

"was it already bad out," Miller testified "[w]ell, I felt like it was a little slick." *Id.* When asked if she knew when she went to her car that the weather conditions were bad, she answered: "I knew when I got to my – by the time that I got to my car, yeah." *Id.* She also indicated there was less than an inch of snow on the ground and did not recall if it was snowing at the time.

[8] When asked her reason for moving her car, Miller testified "[b]ecause as I walked out of the hotel, I had to walk across the parking lot, and that felt a little uncomfortable," and when asked how, she testified "[u]ncomfortable like you didn't know what was under your feet, ice. It was a little slick. The sidewalk had been salted that I walked on. So the reason that I moved my car was to get closer to the sidewalk beyond the carport so that I could get back. That was my best route to getting back onto a safe sidewalk." *Id.* at 35. When asked "[s]o when you walked out to the car, you knew that there was snow and ice on the ground," Miller said "[b]y the time that I stood on the – as I got closer to my car, yes, it was obvious." *Id.* at 36. Miller was asked "as I understand it, you moved your car because you knew that the conditions were bad and you wanted to get closer to the entrance," and she said "[y]es." *Id.*

[9] Miller was then asked to explain her route of travel from her vehicle to where she fell, and she testified that she exited her car, that "there was a car parked to the left of me, and then there was a carport, or the sidewalk that goes to the carport," and that she "shut the door, walked behind the car, and stepped up onto the curb on that sidewalk past the carport, and from there I went down. I stepped up onto the sidewalk." *Id.* She testified that she walked from her

vehicle to the point where she fell "15, 17 feet. Maybe a little bit more." *Id.* at 37. She testified that she had a cup of coffee in her hand and a backpack on her shoulder, and that she had been wearing jeans and steel toe shoes as she often spends time on the floor of manufacturing and food and beverage facilities. When asked "[s]o you got out to your car and determined that the conditions were bad enough that you were going to cancel your calls," Miller replied "[c]orrect." *Id.* at 38. When asked to describe how she fell, she said: "I stepped up on the far – you know, if you're looking at the hotel as far . . . to the right, and I stepped up with my right foot, one, and as I picked up my left foot to also move it up, things just went out from under me, and I came down." *Id.* Miller was asked "if I understand your testimony, you were stepping up immediately prior to your falling or stepping up onto a curb," and Miller said "[s]tepping onto the sidewalk. There's a curb, and then the sidewalk begins." *Id.*

[10] In a Decree dated February 12, 2015, the court found that Miller did not file a response to the Hotel's summary judgment motion, that there were no genuine issues of material fact, and that the Hotel was entitled to summary judgment as a matter of law, and the court entered judgment in favor of the Hotel and against Miller. Miller filed a motion to correct error, and the court denied the motion. In its CCS entry dated March 25, 2015, the court noted it denied Miller's motion to correct error and stated that her summary judgment motion was filed two weeks after the response to the Hotel's summary judgment motion was due, that accordingly the pleading cannot be considered a timely

response, and that under the circumstances a final judgment had been entered and the trial court would take no further action with respect to Miller's motion.

## *Discussion*

[11] The issue is whether the trial court erred in entering summary judgment in favor of the Hotel and against Miller or abused its discretion in denying Miller's motion to correct error. We generally review rulings on motions to correct error for an abuse of discretion. *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009); *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. *Lighty v. Lighty*, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), *reh'g denied*.

[12] We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id*. We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* In the summary judgment context, we are not bound by the trial court's specific

findings of fact and conclusions of law. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id*. Summary judgment is rarely appropriate in negligence cases because they are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Kramer v. Catholic Charities of Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015).

[13]   Miller contends the Hotel is not entitled to summary judgment based upon the affirmative defense of incurred risk. She claims that her testimony established only that the first sidewalk leading to the parking lot had been salted and that no evidence was designated to establish that the parking lot or the sidewalk where she fell had been treated with rock salt or that the Hotel took reasonable efforts to make the walking areas of the premises safe. She argues that, "[a]fter walking into the parking lot[, she] noticed the surface of the parking lot was slick . . . ." Appellant's Brief at 11. She further contends that, while the Hotel's position is that she knew the parking lot was slick, the record establishes that her fall occurred not in the parking area but on an adjacent sidewalk near the carport which was not salted, that her knowledge that the parking area was slick does not establish that she had an appreciation that an adjacent sidewalk was also slick and unsalted, and that there is no evidence of "venturousness." *Id.* at 12. She states that, "[h]aving just walked on a salted sidewalk, her act of driving to a similar sidewalk which she perceived to be a safe walkway negates any voluntary acceptance of the risk" and that "[c]learly [she] took appropriate

action to avoid the risk when she appreciated it." *Id.* She also asserts that the court failed to analyze the motion for summary judgment in accordance with the Comparative Fault Act.

[14] The Hotel maintains the designated evidence demonstrates that it breached no duty to Miller and thus that summary judgment in its favor was proper. It argues that Miller's deposition testimony "establishes her awareness of the adverse conditions and her appreciation of the danger those conditions posed" and that she "was personally aware of the slick, snowy, and icy conditions, so much so that she canceled planned travel, fearing it posed a mortal danger to her and moved her car in an attempt to reduce the distance she had to walk to go back inside the hotel." Appellee's Brief at 13-14. The Hotel further argues the designated evidence does not reveal the condition of the area where Miller fell and whether it was salted or unsalted. It argues that Miller knew from looking outside that the area was snow covered, experienced the snowy and icy conditions first hand once she started walking to her car, yet continued knowing the conditions were dangerous, and, returning to the hotel and despite the conditions, carried a coffee and a fifteen-pound backpack.

[15] Miller's action against the Hotel is a negligence claim. In order to recover on a negligence theory, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim.

*Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008), *trans. denied*.

[16] The parties do not dispute that the Hotel owed a duty to Miller as an invitee. "If a duty of care exists, the determination of whether a breach of duty occurred is a factual question requiring an evaluation of the landowner's conduct with respect to the requisite standard of care." *Countrymark*, 892 N.E.2d at 688 (citing *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990)). As a result, summary judgment is "rarely appropriate" in negligence cases. *Id.* (citing *Rhodes,* 805 N.E.2d at 387). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id*. (citing *Rhodes,* 805 N.E.2d at 387).

[17] A property owner must maintain its property in a reasonably safe condition for business invitees. *Id.* (citing *Douglass*, 549 N.E.2d at 369). Indiana has adopted the formulation of landowners' liability to business invitees expressed in the Restatement (Second) of Torts. *Id.* (citing *Douglass*, 549 N.E.2d at 370); *see Smith v. Baxter*, 796 N.E.2d 242, 244 (Ind. 2003). The Restatement provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> > (a)  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b)  should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343. Under this section, an invitee is "entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1265 (Ind. Ct. App. 2002) (citing RESTATEMENT (SECOND) OF TORTS § 343, cmt. d), *trans. denied*.

[18] In addition, Restatement (Second) of Torts § 343A(1), which addresses known and obvious dangers and is meant to be read in conjunction with § 343, provides: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves, and thus the condition or activity must not only be known to exist, it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. RESTATEMENT (SECOND) OF TORTS § 343A, cmt. b. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable person, in the position of the visitor, exercising ordinary perception, intelligence, and judgment. *Id.*

In *Smith v. Baxter*, the plaintiff climbed a ladder on a grain bin and fell. 796 N.E.2d at 245-246. The plaintiff and one of the defendants had commented earlier in the day that the ladder was damp with dew. *Id.* at 246. The trial court denied the defendants' motion for judgment on the evidence. *Id.* at 243. The Indiana Supreme Court discussed Restatement (Second) of Torts §§ 343 and 343A and stated that consideration of the parties' knowledge of a risk could be appropriate for the determination of both breach of duty and the defense of incurred risk. *See id.* at 243-244. Quoting its previous opinion in *Douglass v. Irvin*, the Court stated:

> For purposes of analysis of breach of duty, a landowner's knowledge is evaluated by an objective standard. This is in contrast to the determination of the defense of incurred risk, wherein the invitee's mental state of venturousness (knowledge, appreciation, and voluntary acceptance of the risk) demands a subjective analysis of actual knowledge. *Thus, factual circumstances may exist in which a court may find that a landowner's failure to take precautions or to warn may constitute a breach of duty because it was reasonably foreseeable that the invitee could suffer harm despite knowledge or obviousness of the risk, and at the same time find that an invitee had actual knowledge and appreciation of the specific risks involved and voluntarily accepted that risk, thus establishing the defense of incurred risk.*

*Smith*, 796 N.E.2d at 244 (quoting *Douglass*, 549 N.E.2d at 370). The Court acknowledged that *Douglass* had been decided before the adoption of the Indiana Comparative Fault Act and observed that, under the Comparative Fault Act, while a plaintiff's conduct constituting incurred risk may not support finding a lack of duty, such conduct is not precluded from consideration in

determining breach of duty. *Id.* at 244-245. The Court thus concluded that the analysis in *Douglass* has not been altered by the Comparative Fault Act and that "[t]he comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts." *Id.* at 245.

[20] Turning to the defendants' motion for judgment on the evidence, the Court noted that the evidence showed the defendants were aware of risks presented by the ladder and that it was also reasonable to infer that the defendants were aware that the plaintiff would climb the ladder despite its obvious hazards. *Id.* at 246. The Court concluded that substantial evidence existed that the defendants knew or should have known that climbing the ladder involved an unreasonable risk of harm and further, that "[i]t is a much closer question as to whether there was substantial evidence that (1) the defendants should have expected that the plaintiff would not discover or realize the danger, or fail to protect himself against it, and (2) the defendants should have anticipated the harm despite the plaintiff's knowledge or the obvious nature of the risk," that it must look only to the evidence and the reasonable inferences most favorable to the plaintiff as a nonmoving party, and that "[t]he interpretation of the evidence, with the necessary assessments of weight and credibility, was properly left to the sound judgment of the jury." *Id.*

[21] In *Countrymark*, the plaintiff was on the defendants' property to pick up gasoline. 892 N.E.2d at 686. The meter on the gas racks malfunctioned, and

the plaintiff could not complete the loading of his fuel. *Id.* The plaintiff walked to a maintenance building and, as he approached the building, noticed ice on the pavement in front of both doors. *Id.* He attempted to walk across the ice but fell. *Id.* The plaintiff sued the defendants for his personal injuries, and the trial court denied the defendants' motion for summary judgment. *Id.* at 687.

[22] On appeal, we set forth the relevant standards under the Restatement (Second) of Torts §§ 343 and 343A(1) and *Smith* as discussed above. *Id.* at 688-690. We then concluded that the appropriate standard under Restatement (Second) of Torts § 343 was (a) whether Countrymark knew or by the exercise of reasonable care would have discovered the dangerous condition and should have realized that it involved an unreasonable risk of harm to invitees; (b) whether Countrymark should have expected that an invitee would fail to protect himself from the danger; and (c) whether Countrymark failed to exercise reasonable care to protect the invitee. *Id*. at 691. We also noted that the plaintiff had "admitted that he was aware of the ice and recognized the danger" and thus that, "in addition to the aforementioned elements under section 343, under section 343A of the Restatement (Second) of Torts, Countrymark is not liable unless they should have anticipated the harm despite an invitee's knowledge of the danger or the obviousness of the danger." *Id.*

[23] We noted that we resolve all inferences in favor of the nonmoving party in considering a motion for summary judgment, that the plaintiff had a duty under Countrymark's rules to report malfunctions to a Countrymark employee, and that while searching for a Countrymark employee the plaintiff fell on ice in

front of the maintenance building. *Id.* We concluded that, under the circumstances, genuine issues of material fact existed as to whether Countrymark, by the exercise of reasonable care, would have discovered the dangerous condition and should have realized that it involved an unreasonable risk of harm to the plaintiff, whether Countrymark should have expected that the plaintiff would fail to protect himself from the danger, and whether it failed to exercise reasonable care to protect the plaintiff. *Id.* We further specifically held that "genuine issues exist[ed] as to whether Countrymark should have anticipated the harm despite [the plaintiff's] knowledge of the danger or the obviousness of the danger." *Id.* at 691-692. We thus held that summary judgment was not proper. *Id.* at 692.

[24] In this case, the parties do not dispute that the Hotel had a continuing duty to maintain its property in a reasonably safe condition for invitees and to deal with ice and snow on its property for the safety of its customers. We thus turn to whether the designated evidence establishes that the Hotel did not breach its duty as a matter of law. The appropriate standard under Restatement (Second) of Torts § 343 is: (a) whether the Hotel knew or by the exercise of reasonable care would have discovered the dangerous condition and should have realized that it involved an unreasonable risk of harm to invitees; (b) whether the Hotel should have expected that an invitee would fail to protect herself from the danger; and (c) whether the Hotel failed to exercise reasonable care to protect the invitee. *See Countrymark*, 892 N.E.2d at 691. Further, to the extent Miller had actual knowledge of and appreciated the risk of a dangerous condition,

under Restatement (Second) of Torts § 343A, the Hotel is not liable unless it should have anticipated the harm despite Miller's knowledge of the danger or the obviousness of the danger. *See id.*

[25] The designated evidence reveals that Miller looked outside before she departed the hotel building and saw a dusting of snow. When asked if she knew when she went to her car that the weather conditions were bad, Miller answered: "I knew *when I got to my – by the time that I got to my car*, yeah." Appellant's Appendix at 34 (emphasis added). When asked why she moved her vehicle, she stated: "Because as I walked out of the hotel, I had to walk across the parking lot, and that felt a little uncomfortable." *Id.* at 35. After cancelling her meeting, Miller moved her vehicle as close as she could to the carport or sidewalk. When asked "[s]o when you walked out to the car, you knew that there was snow and ice on the ground," Miller replied: "*By the time* that I stood on the – *as I got closer to my car*, yes, it was obvious." *Id.* at 36 (emphases added). Also, when asked "[s]o *you got out to your car and determined* that the conditions were bad enough that you were going to cancel your calls," she replied "[c]orrect." *Id.* at 38 (emphasis added).

[26] As to whether Miller voluntarily accepted a known and obvious risk of danger as a matter of law, we conclude that a reasonable inference from Miller's deposition testimony is that she was not aware of the relative slickness of the parking lot and walkways on the Hotel's property until after she had walked on the parking lot either part or all of the way to her vehicle. To satisfy its burden

of making a *prima facie* showing that it was entitled to summary judgment, the Hotel was required to designate evidence showing that Miller had actual knowledge and appreciation of the specific risks involved and voluntarily accepted those risks. *See Smith*, 796 N.E.2d at 244. An invitee's mental state of knowledge, appreciation, and voluntary acceptance of the risk demands a subjective analysis of actual knowledge. *See id.* A reasonable jury could conclude that, by the time Miller had actual knowledge and appreciation of the risk or extent of the slick conditions on the Hotel's property, there was no reasonable opportunity for her to avoid or escape the risk or the conditions under the circumstances. Also, Miller testified that the portion of the sidewalk on which she had previously walked had been salted, that she moved her vehicle as close as she could to the carport or the sidewalk near the carport, and that the reason she moved her vehicle "was to get closer to the sidewalk beyond the carport so that I could get back" and "[t]hat was my best route to getting back onto a safe sidewalk." Appellant's Appendix at 35. The Hotel acknowledges that the designated evidence does not establish that the area of the sidewalk on which Miller's foot slipped had been salted or treated. *See* Appellee's Brief at 15 (stating "an examination of the designated deposition testimony includes no testimony as to the condition of the area in which Miller fell, i.e., whether it was salted or unsalted"). Under the circumstances, including that Miller was attempting to return to the sidewalk area she believed had been salted or treated and moved her vehicle as close to the carport or sidewalk as possible once she had actual knowledge of the slick condition of the parking lot, a reasonable jury could determine that Miller did not have an

appreciation of the specific risk of the slick sidewalk, did not have a reasonable opportunity to avoid the conditions under the circumstances, and did not voluntarily accept the risk of any dangerous condition once she had actual knowledge of it. *See Get-N-Go, Inc. v. Markins*, 544 N.E.2d 484, 485-488 (Ind. 1989) (noting that the plaintiff walked onto Get-N-Go's icy parking lot and fell and that she was generally aware of the icy conditions outside but was already on the parking lot when she realized the extent of the danger, and holding that "even when a danger is known and appreciated, continued exposure to it does not amount to incurring its risk where there is no reasonable opportunity to escape from it" or where "the exposure is the result of influence, circumstances or surroundings which are a real inducement to continue despite the danger"[1] (citing *Hollowell v. Midwest Smorgasbord, Inc.*, 486 N.E.2d 16, 17-18 (Ind. Ct. App. 1985) (holding, based upon the designated facts that the plaintiff realized the floor was wet after he had started to walk over it, that a jury could reasonably infer that the plaintiff found himself in a position of peril whether he continued or retreated and that, by walking close to the wall in an effort to avoid the water, he had exercised reasonable care that an ordinary person would exercise in similar circumstances, and reversing the trial court's grant of summary judgment), *reh'g denied*, *trans. denied*)), *on reh'g*, 550 N.E.2d 748 (Ind.

---

[1] Although *Get-N-Go*, like *Douglass*, was decided prior to the adoption of the Comparative Fault Act, as noted above the Indiana Supreme Court held in *Smith* that a plaintiff's conduct constituting incurred risk may still be considered with respect to whether there was a breach of duty. *See Smith*, 796 N.E.2d at 245 ("The comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts.").

1990); *see also Handy v. P.C. Bldg. Materials, Inc.*, 22 N.E.3d 603, 611 (Ind. Ct. App. 2014) (holding in part that reasonable people could differ as to whether certain countertops leaning against a wall represented an obvious danger to the plaintiff), *trans. denied*. As a result, based on the designated evidence, we cannot say that Miller voluntarily accepted the risk of a known and obvious danger as a matter of law.

[27] In addition, under these circumstances a trier of fact could reasonably determine that the Hotel should have anticipated that Miller would attempt to walk from her vehicle back to the carport or sidewalk despite the obviousness of the risk or danger. *See Countrymark*, 892 N.E.2d at 686-692 (observing that the plaintiff noticed ice on the pavement in front of both doors and nevertheless attempted to walk across the ice and holding that genuine issues of fact existed as to whether Countrymark should have anticipated the harm despite the plaintiff's knowledge or the obviousness of the danger); *see also Smith*, 796 N.E.2d at 246 (concluding it was a close question as to whether the defendants "should have anticipated the harm despite the plaintiff's knowledge or the obvious nature of the risk"). Based on the designated evidence, genuine issues of material fact exist as to whether the Hotel should have anticipated that its customers would attempt to walk from their vehicles to the carport or sidewalk despite their knowledge or the obviousness of the risk.

[28] Further, the Hotel did not designate evidence that it did not know of, or by the exercise of reasonable care would not have discovered, the conditions of the

parking lot or walkways on its property, that it did not expect its invitees to walk from their vehicles to the carport or sidewalk, that the condition of the portion of the sidewalk upon which Miller's foot slipped was not unreasonably unsafe or that it had treated that area, or that it had taken steps constituting reasonable care to protect its invitees under the circumstances. *See Christmas v. Kindred Nursing Centers Ltd. P'ship*, 952 N.E.2d 872, 881-882 (Ind. Ct. App. 2011) (noting that the defendant had argued that the danger of slipping on ice was known or obvious to the plaintiff, holding in part a trier of fact could infer from the designated evidence that the defendant should have expected that the plaintiff would not realize the unreasonable risk of harm of ice hidden by water and snow, concluding there was a genuine issue of material fact pertaining to whether the defendant breached its duty of care, and reversing the trial court's entry of summary judgment).

[29] Construing all factual inferences in favor of Miller as the nonmoving party, we conclude that the Hotel failed to carry its burden of establishing that Miller voluntarily accepted a known and obvious risk as a matter of law or that it did not breach its duty to maintain its property in a reasonably safe condition for its invitees as a matter of law. Accordingly, the entry of summary judgment in favor of the Hotel was improper. *See Countrymark*, 892 N.E.2d at 691-692.

## *Conclusion*

[30] For the foregoing reasons, we reverse the entry of summary judgment in favor of the Hotel and against Miller and remand for further proceedings.

Reversed and remanded.

Riley, J., and Altice, J., concur.