## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 28 2020, 10:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANTS *PRO SE*

Melody Barrows
Nicholas Barrows
Peru, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances H. Barrow
Aaron T. Craft
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Melody Barrows, et al.,

*Appellants-Plaintiffs,*

v.

State of Indiana, et al.,

*Appellees-Defendants.*

December 28, 2020

Court of Appeals Case No.
20A-CT-563

Appeal from the LaPorte Circuit Court

The Honorable Thomas J. Alevizos, Judge

Trial Court Cause No.
46C01-1604-CT-598

**Bailey, Judge.**

# Case Summary

When Cole Lane ("Lane") was incarcerated in the Indiana Department of Correction ("the DOC"), he was targeted by a prison gang and physically injured. The gang also extorted protection monies from Lane's mother and stepfather, Melody and Nicholas Barrows ("Melody" and "Nicholas," at times, collectively "the Barrows"). Lane and the Barrows filed suit against the State of Indiana, the DOC, Corizon (a contracted health care provider), and individual DOC employees. The complaint alleged claims of negligence, intentional infliction of emotion distress, and violations of Lane's civil rights. Corizon removed the case to federal court, Lane settled his claims, and the matter was remanded to state court for trial of the Barrows' claims for negligence and intentional infliction of emotional distress.[1] Summary judgment was granted to all defendants. The Barrows now appeal, pro-se. We affirm.

# Issues

The Barrows present the following restated issues for review:

    I.    Whether the trial court improvidently granted summary judgment to the defendants on the intentional infliction of emotional distress claims; and

---

[1] Corizon was dismissed as a defendant and is not a party to these state claims.

II.    Whether the trial court improperly granted summary judgment to the defendants on the negligence claims.

# Facts and Procedural History

In 2011, Joseph Hiles ("Hiles") called Melody, claiming that he had Lane tied up and would release him upon payment of $250.00. The Barrows paid $250.00 to Hiles and Lane was released, but Melody reported the incident to police. Hiles was subsequently convicted of kidnapping and was sent to Westville Correctional Facility ("Westville"). Lane and Melody obtained a no-contact order to prohibit Hiles from contacting either of them.

In 2013, Lane was sentenced to serve time in the DOC, and Melody pre-emptively called the DOC Reception Diagnostic Center to advise of the no-contact order. DOC personnel told Melody that Lane was classified as a low-level offender and prisoners of this classification were typically not housed at Westville. Melody was assured that the no-contact order and an internal DOC order for separation were of record. Notwithstanding expectations, Lane was sent to Westville.

Shortly after Lane's arrival at Westville in September of 2013, Melody received a call from an individual claiming to be a member of the same gang as Hiles. He demanded money not to tell Hiles that Lane was at Westville. Next, different individuals purporting to be gang members began calling Melody almost daily. Melody was typically instructed to buy a pre-paid debit card and

give the card numbers to the next caller. She and Nicholas complied with the demands until they were out of funds.

[6] On November 14, 2013, a person identifying himself as "Buddha" called Melody and told her that "there was a price on Cole's head." (Appellee's App. at 13.) Two days later, "Buddha" called back to demand $1,500.00 or Lane would be stabbed. Depleted of cash, the Barrows offered "Buddha" a vehicle they estimated to be worth $1,500.00 to $2,000.00. "Buddha" sent his mother to a repair shop in Peru, Indiana, where Melody surrendered the vehicle and keys. Melody later mailed the vehicle title to an address provided to her. Despite the Barrows' compliance with many demands, Lane was beaten on multiple occasions.

[7] Lane was transferred to Plainfield Correctional Facility ("Plainfield"), but the demands for money from the Barrows continued. In April of 2014, Lane was walking from the cafeteria when he was ambushed and beaten by six inmates. He was provided medical treatment (albeit allegedly minimal and delayed), placed in protective custody, and transferred to the New Castle Correctional Facility ("New Castle"). After Lane's transfer to New Castle, the Barrows considered him to be safely housed and did not comply with any further demands for money.

[8] During these events, the Barrows did not contact law enforcement. But they hired an attorney, who sent a letter dated November 25, 2013 addressed to Mark Levenhagen ("Levenhagen"), the Westville superintendent, and to the

Commissioner of the DOC. The letter detailed the extortion scheme and past violence against Lane. Additionally, Melody initiated numerous telephonic and e-mail contacts with DOC personnel.

[9] Melody had two telephone conversations discussing the situation with Sharon Hawk ("Hawk"), whom Melody understood to be an educational director at a Westville dorm. In November of 2013, Melody called Larry Steinbeck ("Steinbeck"), a captain at Westville. Melody reported that Lane had been "jumped" and beaten, and she asked that Lane be placed in protective custody (*Id.* at 12.) Melody advised Steinbeck that she had Lane's "power-of-attorney," but Steinbeck responded that Lane needed to personally request protective custody. (*Id.*) Melody had "a string of" e-mail and telephone contacts with Marshall Hayes ("Hayes"), of the DOC Internal Affairs Division. (*Id.* at 16.) Melody disclosed the history of extortion and violence, and Hayes stated that he would "get to the bottom of it" and "it would cease." (*Id.* at 19.) Melody spoke with Hayes a final time after Lane was injured at Plainfield. She also had a telephone conversation with a Plainfield captain, Nathan Lagenour ("Lagenour"), to check on Lane's condition after the beating that took place in that facility.

[10] On March 30, 2016, Lane and the Barrows filed a Complaint, naming as defendants the State of Indiana, the DOC, Westville, Plainfield, Corizon, Levenhagen, Hawk, Steinbeck, Lagenour, Hayes, and three other individuals alleged to be DOC employees. Because Lane claimed that his civil rights had been violated, the case was removed to federal court. Lane settled his claims

against all defendants and, on July 25, 2017, the United States District Court, Southern District of Indiana remanded the case to state court for trial of the Barrows' claims.

[11] On August 31, 2018, the defendants filed a motion for summary judgment and designation of materials. On October 31, 2018, the Barrows filed a response in opposition to the motion for summary judgment. On February 25, 2019, the trial court conducted a summary judgment hearing, at which argument of counsel was heard regarding whether the defendants had a duty to act to prevent extortion of an inmate's family members.

[12] On November 25, 2019, the trial court entered an order granting summary judgment to all defendants. The trial court determined that the individual defendants were immune from liability under the Indiana Tort Claims Act ("the Act")[2] and the government entities did not owe the Barrows a duty of care. Additionally, the trial court's order stated that the designated evidence revealed no contributory negligence by the Barrows, nor did it reveal an act that would amount to intentional infliction of emotional distress. The Barrows filed a motion to correct error, which was deemed denied. They now appeal.

---

[2] Ind. Code § 34-13-3-1, *et seq.*

# Discussion and Decision

## Summary Judgment Standard of Review

[13] We review summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We construe the evidence in favor of the nonmovant and resolve all doubts against the moving party. *Pfenning v. Lineman*, 947 N.E.2d 392, 397 (Ind. 2011) (quotation omitted). The party moving for summary judgment bears the initial burden to establish its entitlement to summary judgment. *Id*. at 396–97. Only then does the burden fall upon the nonmoving party to set forth specific facts demonstrating a genuine issue for trial. *Id*. at 397 (quotation omitted).

[14] When the moving party is the defendant, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Dible v. City of Lafayette*, 713 N.E.2d 269, 272 (Ind. 1999). The summary judgment process is not a summary trial. *Hughley*, 15 N.E.3d at 1003–04. Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims. *Id*. at 1004. Nevertheless, a grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating

that the trial court erred. *Kramer v. Catholic Charities of Diocese of Fort Wayne-South Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015).

## Intentional Infliction of Emotional Distress

[15]    Count II of the Complaint, denominated "Intentional Infliction of Emotional Distress," alleged as follows:

> Defendants, State of Indiana, Indiana Department of Corrections, Westville Correctional Facility, Plainfield Correctional Facility, Sharon Houck, Larry Steinbeck, Marshall Hayes, Charles Whelan, Hector Valdez, Nathan Lagenour, Craig Gage, acted willfully and intentionally to cause emotional distress [to] Plaintiffs, which proximately caused damages to them. WHEREFORE, Plaintiffs request judgment against all Defendants[.]

(App. Vol. II, pg. 40.)  Although the Barrows contend that summary judgment was improperly granted, they do not specifically address whether or not an element of their intentional tort claim was negated.  Instead, they argue only that a special relationship was formed when Melody sought help from DOC staff and received certain assurances.  The individual defendants claim to have public employee immunity under the Act and the government entities argue that, as a matter of law, the conduct of DOC employees does not constitute

intentional infliction of emotional distress, for which the government entities could be vicariously liable.[3]

[16] The tort of intentional infliction of emotional distress was first recognized as a separate cause of action without the need for an accompanying tort in *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991). In *Cullison*, our Supreme Court defined the tort of intentional infliction of emotional distress as: "'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ....'" *Id*. at 31 (quoting Restatement (Second) of Torts § 46 (1965)). It is the intent to harm the plaintiff emotionally which constitutes the basis for this tort, the elements of which are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind. Ct. App. 2005) (citing *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 523 (Ind. Ct. App. 2001)). "The requirements to prove this tort are rigorous." *Id.* Intentional infliction of emotional distress is found where conduct "exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious

---

[3] Vicarious liability of an employer is premised upon the relationship between employer and employee, as opposed to wrongdoing on the part of the employer. *See Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107 (Ind. Ct. App. 2014). Tortious acts are outside the scope of employment when they flow from a course of conduct that is independent of activities that serve the employer. *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 462 (Ind. 2018). "[T]he scope of employment—which determines whether the employer is liable—may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal." *Id.* at 461.

kind." *Id.* at 457. "In the appropriate case, the question can be decided as a matter of law." *Id.*

[17] The Complaint, inclusive of factual assertions related to now-settled claims, averred that Lane was deprived of adequate protection and proper medical treatment. As to the facts in relation to the Barrows, the Complaint asserted that they "were sent ransoms for Cole's safety" and were "compelled to make payments to gang members." (App. Vol. II, pg. 39.)

[18] Deposition testimony, designated as summary judgment evidence, reveals the interactions upon which the Barrows base their intentional infliction of emotional distress claims. Two of the named individuals are not known to the Barrows; a third was referenced as possibly working in the DOC Internal Affairs Division. As to Levenhagen, he was the named recipient of a letter from the Barrows' attorney but did not change Lane's housing in response to the letter. As to Hawk, she engaged in two telephone conversations with Melody but apparently was not empowered to change Lane's dorm assignment. When speaking with Steinbeck, Melody requested protective custody for Lane; Steinbeck did not arrange this. He was, in Melody's opinion, rude. Hayes assured Melody, in their e-mail conversation, that he would investigate the circumstances surrounding Lane's injuries and get the conduct stopped. But Melody did not think that he had done anything to fulfill his promises. Lagenour engaged in a telephone conversation with Melody to report on Lane's physical condition after the beating. Melody opined, in her deposition, that

Lagenour should have obtained more extensive treatment of Lane's injuries than an ice pack and ibuprofen.

[19]    The defendants have not contested the Barrows' version of events. The individually named defendants claim to have public employee immunity under the Act. In general, a plaintiff may not maintain an action against a public employee if the employee was acting within the scope of his or her employment. *Feldhake v. Buss*, 36 N.E.3d 1089, 1093 (Ind. Ct. App. 2005) (citing Indiana Code Section 34-13-3-5(a)). The Act expresses a legislative policy to protect the State's finances while ensuring that public employees can exercise their independent judgment necessary to carry out their duties without the threat of litigation over decisions made within the scope of their employment. *Noble Cnty. v. Rogers*, 745 N.E.2d 194, 197 (Ind. 2001).

> A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
>
> (1) criminal;
>
> (2) clearly outside the scope of the employee's employment;
>
> (3) malicious;
>
> (4) willful and wanton; or
>
> (5) calculated to benefit the employee personally.

The complaint must contain a reasonable factual basis supporting the allegations.

Ind. Code § 34-13-3-5(c).

[20] The Barrows did not comply with the foregoing pleading requirements in seeking to impose personal liability upon individual defendants. Instead, the Complaint specifically alleged that the individual defendants were acting within the scope of their DOC employment, such that the public employer should be held vicariously liable.[4] When a plaintiff fails to comply with statutory pleading requirements and does not cure the defect with an amended complaint, the claim against the employee is barred and summary judgment is appropriate. *Feldhake*, 36 N.E.3d at 1093. Here, the individual defendants are entitled to summary judgment on the claims for intentional infliction of emotional distress. We turn to consider the allegations of vicarious liability and whether the government entities are entitled to summary judgment.

[21] According to the designated deposition testimony and responses to Interrogatories, the Barrows suffered great emotional distress from learning that Lane was injured and also being subjected to an extortion scheme. They asserted that the extortion scheme would have been thwarted earlier had DOC

---

[4] The named defendant Hector Valdez is an exception. The DOC did not employ a person named Hector Valdez and Melody conceded in her deposition that she had used incorrect information in naming this defendant. She had once believed that an employee named Hector Valdez took possession of debit card information supplied by the Barrows and had used it for his own purposes. By the time of her deposition, Melody believed that the act had been committed by a prison guard whom she could not identify.

employees acted more diligently in the performance of their duties. Considering the facts in the light most favorable to the Barrows as the non-moving party, DOC employees at times made certain assurances to Melody. But they did not promptly segregate Lane at Melody's request; some were less than empathetic with her circumstances. At bottom, very little action was taken to avoid continuation of reported harms.

[22] That said, we can conclude as a matter of law that the actions or inactions complained of do not constitute "outrageous" behavior as contemplated by the narrow definition of the tort of intentional infliction of emotional distress. There may have been apathy, negligence, or false promises, but we cannot say that it was so extreme in degree as to go beyond all possible bounds of decency, such that it would be regarded as atrocious and utterly intolerable in a civilized society. *See Bradley v. Hall*, 720 N.E.2d 747, 752–53 (Ind. Ct. App. 1999). Moreover, there is nothing in the record which would support a reasonable inference that DOC employees intended to cause the Barrows emotional distress. *See Cullison*, 570 N.E.2d at 31 (recognizing intent to cause emotional harm to plaintiff as the basis for the tort of intentional infliction of emotional distress). Under these circumstances, an employer could not be vicariously liable under this tort theory. The trial court did not err in granting summary judgment to the government entities upon the Barrows' claims of intentional infliction of emotional distress.

# Negligence

[23] The Complaint also alleged negligence by the government entities, as follows:

> Defendants, State of Indiana, Indiana Department of
> Corrections, Westville Correctional Facility, and Plainfield
> Correctional Facility, did breach the standard of care to protect
> the interests of Melody and Nicholas Barrows, which
> proximately caused damages to them.

(App. Vol. II, pg. 40.)  To recover on a negligence claim, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach.  *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 19 (Ind. Ct. App. 2015).

[24] Summary judgment is rarely appropriate in negligence cases because such cases are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Kramer*, 32 N.E.3d at 231.  However, summary judgment for a defendant is appropriate if the moving party negates at least one element of the negligence claim. *American Legion Pioneer Post No. 340 v. Christon*, 712 N.E.2d 532 (Ind. Ct. App. 1999).  Absent a duty, there can be no breach and no recovery in negligence.  *Sheley v. Cross*, 680 N.E.2d 10, 12 (Ind. Ct. App. 1997), *trans. denied*. Generally, the court decides as a matter of law whether a duty exists.  *Spears v. Blackwell*, 666 N.E.2d 974, 977 (Ind. Ct. App. 1996), *trans. denied*.

[25] Here, the trial court concluded that the government entities had no duty to the Barrows, reasoning that the Barrows were not in the care or control of the DOC

and public entities were not responsible to the Barrows for prevention of crime within a penal facility. The government entities argue that there is no recognized duty to prevent economic harm to parents of prisoners because of other inmate conduct, and that the recognition of such a duty would be contrary to public policy because it would impose an unduly onerous burden on penal facilities. The Barrows argue only that Melody's interactions with DOC staff gave rise to a special relationship. They observe: "DOC was in control of Cole Lane and his safety, as well as Hiles and his offender incarcerated gang members (extortionists); therefore, DOC was in the best position to enforce the non-contact order and cease the extortion and assaults." Appellant's Brief at 13.

[26] Without dispute, the DOC had a duty to Lane. The duty of a custodian of inmates is "to exercise reasonable care to preserve the life, health, and safety of the person in custody." *Sauders v. Cnty. of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998). The duty does not extend to taking action to prevent a particular act, for example, suicide. *Id*. Rather, the custodian's duty "is to take reasonable steps under the circumstances for the life, health, and safety of the detainee." *Id*. As we have stated:

> public policy considerations require that the DOC not be made
> an absolute insurer of prisoners' safety. Although the DOC is
> not a guarantor, neither has it been relieved of all responsibility
> for safekeeping its charges. Rather, the DOC's responsibility
> takes the middle ground: it has the duty "to take reasonable
> precautions to preserve the life, health, and safety of prisoners.

*Cole v. Ind. Dep't of Corr.*, 616 N.E.2d 44, 45-46 (Ind. Ct. App. 1993) (quoting *Reed v. State*, 479 N.E.2d 1248, 1254 (Ind. 1985)), *trans. denied*. "Because of the DOC's unusual ability to control all aspects of its prisoners' lives, the DOC's duty to take reasonable precautions may include an obligation to control the conduct of third persons." *Id*. at 46. *See also Williams v. Ind. Dep't of Correction*, 142 N.E.3d 986, 1008 (Ind. Ct. App. 2020) (recognizing that the DOC owes a duty to ensure that its contractors provide appropriate medical care for inmates). Here, any claims arising from a breach of DOC duty to Lane were settled.

[27] The Barrows were not under the control of the DOC. They do not argue that Indiana has recognized a duty on the part of the DOC to act to prevent pecuniary harm to family members of a person in custody. Nor do they address the merits of extending the duty owed to those in custody to family members of those in custody. Rather, the Barrows claim there is a duty here because of a "special relationship" which arose when Melody "informed DOC of the no-contact order" and "the extortion that was paid to keep her son alive and safe." Appellant's Brief at 9.[5] According to the Barrows, Melody was repeatedly given

---

[5] Arguably, the DOC was in a "special relationship" with Lane, consistent with the Restatement (Third) of Torts Phys. & Emot. Harm § 41 (2012), which provides in relevant part: "An actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship. Special relationships giving rise to the duty provided in Subsection (a) include: … (2) a custodian with those in its custody[.]" Comment c provides in part: "The duty imposed by this Section is to exercise reasonable care under the circumstances. It is not to ensure that the other person is controlled."

assurances of DOC action and she "detrimentally relied on the DOC staff to take care of it as they had assured her they would." *Id.*

[28] Where a duty has not been articulated, Indiana courts use a three-part balancing test to determine whether or not a duty exists. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 387 (Ind. 2016). The focus is upon (1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns. *Id.*

[29] To the extent that there was a relationship here, it was related to Lane's incarceration and consisted of communication between Melody and some DOC employees. The minimal relationship militates against the imposition of a duty.

[30] Foreseeability in the context of duty involves the assessment of '"whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it."' *Id.* at 392 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)). The inquiry involves a general analysis of "the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Id.* at 393. Here, the broad type of plaintiff is a family member of a prison inmate and the harm under consideration is extortion of a family member by a prison gang. Although we can readily conclude that the plotting and commission of crime within prison walls is likely, we do not reach the same conclusion with respect to the likelihood of an ongoing extortion scheme directed to inmate family members.

Finally, we consider the public policy aspect. The government entities argue:

> It would be against public policy to extend the [DOC]'s duty of care to the general public or families of incarcerated persons; such would create virtually limitless liability for the [DOC] and open the floodgates of litigation. In all practicality, it would be virtually impossible and extremely burdensome for the [DOC] to owe a duty to each family member of every inmate. Further, the policy behind imposing a duty on the DOC to protect its inmates is because those inmates do not have access to forms of self-protection and police protection that they would have on the outside.

Appellee's Brief at 24-25. We find this argument persuasive. Although the circumstances of incarceration justify a duty of care on the part of the custodian to the inmate, these circumstances do not extend to family members. Persons who are not incarcerated have access to law enforcement resources; the DOC should not be obliged to foresee that some individuals will choose not to access those resources. Balancing the factors relative to the recognition of a duty of the government entities to the Barrows, we conclude as a matter of law that there is no such duty.

# Conclusion

Summary judgment was properly granted to the individual defendants and public entities upon the claims for intentional infliction of emotional distress. Summary judgment was properly granted to the public entities upon the claims of negligence.

[33] Affirmed.

Robb, J., and Tavitas, J., concur.